# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
                                                  )
MARTIN SANCHEZ-ALANIZ,              )
                                                  )
                      Plaintiff,              )
                                                  )
            v.                                 )        Civil Action No. 13-1812 (EGS)
                                                  )
FEDERAL BUREAU OF PRISONS, *et al.*, )
                                                  )
                      Defendants.          )
—————————————————————— )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment [ECF No. 32] and Plaintiff's Cross Motion for Summary Judgment [ECF No. 34]. The Court will deny plaintiff's cross-motion and instead construe it as his opposition to defendants' renewed motion. For the reasons discussed below, the Court will grant defendants' motion.

## I. BACKGROUND

Plaintiff "is currently serving a sentence of 108 months['] imprisonment imposed by the [United States District Court for] the Southern District of Texas based on a conviction for illegal reentry of a deported alien in violation of 8 U.S.C. § 1326." Mem. of P. & A. in Support of Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. [ECF No. 15] ("Defs.' Mem."), Decl. of Jennifer Vickers ("First Vickers Decl.") ¶ 4; *see* Compl. at 2. He brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP" or "defendant"), a component of the United States Department of Justice ("DOJ"), to challenge its response to three requests for information. *See generally* Compl. at 3-8.

#### A. Request Regarding Administrative Tort Claim No. TRT-WXR-2013-05023

Plaintiff alleges that, in August 2013, he submitted a FOIA request to the BOP's Central

Office "for a copy of the tort claim file related to Tort Claim No. TRT WXR 201305023,"

Compl. at 3; *see id.*, Ex. A (Freedom of Information Act Request dated August 19, 2013), by

which plaintiff demanded compensation of $134.40 for damage to his locker, *see id*. Ex. B-3

(Incident Report dated June 13, 2013), and for the loss of property contained therein, *see id.*, Ex.

B-4 (Small Claims for Property Damage or Loss) dated June 14, 2013).  He also seeks "any

claim[-]related statements issued by any employee or officer of the [BOP,] exhibits,

photographs, diagrams, repair orders, and any other reports related to" the claim.  *Id*. at 3.

Plaintiff explains that the BOP denied his tort claim, *id*. Ex. C (Letter to plaintiff from Dominic

Ayotte, Deputy Regional Counsel, Western Regional Office, BOP), and the information he

requested would allow him "to determine what facts or evidence the regional counsel relied upon

to deny the claim."  *Id*.

"The [Western Regional Counsel's Office (WXRO)] received [p]laintiff's FOIA request .

. . on August 23, 2013."  First Vickers Decl. ¶ 17.  WXRO staff returned the request to plaintiff,

instructing him "that [this] request and [any] future requests must be submitted pursuant to 28

C.F.R. § 513.60" to the BOP's Central Office in Washington, D.C.  First Vickers Decl. ¶ 17; *see

id.*, Attach. 3 (Letter to plaintiff from Dennis M. Wong, Regional Counsel, Western Regional

Office, BOP, dated August 23, 2013).  The declarant "ran a FOIA Report for all requests made

by [p]laintiff and received in the BOP database."  *Id*. ¶ 18; *see id.*, Attach. 4 (FOIA search

results).  She determined that "[t]he Central Office never received a FOIA request [from

plaintiff] for the investigative reports pertaining to TRT-WXR-2013-05023."  *Id*. ¶ 18.  In other

words, plaintiff "never filed with the Central Office as advised by the WXRO and required by [regulation]."  *Id*.

### B.  *FOIA Request No. 2013-10877*

Plaintiff alleges that, in August 2013, he submitted another FOIA request to the BOP's Central Office "for a copy of [a] report issued by the Special Investigative Service at Atwater United States Penitentiary in Atwater[,] California . . . on or about May 2013, June 2013, or July 2013."  Compl. at 4; *see id*., Ex. D (Freedom of Information Act Request dated August 6, 2013). According to plaintiff, "[t]he report indicates separation factors and the degree of risk of physical injury or death [he faced] at Atwater USP."  Compl. at 4.  The BOP's declarant states that the Central Office received the request on August 19, 2013, First Vickers Decl. ¶ 20, and forwarded the matter to the WXRO for processing, *id*. ¶ 21.  "The WXRO FOIA technician assigned FOIA Request No. 2013-10877 to this request."  *Id*.

Upon receipt of five pages of responsive records from USP Atwater, *see id*., Attach. 5 (email dated November 2, 2013 regarding FOIA Request 10877), on December 11, 2013, WXRO staff released the documents in part to plaintiff at no charge, redacting "portions of each of . . . page[] pursuant to [Exemptions 7(C) and 7(F)]," *id*. ¶ 22; *see id*., Attach. 7 (redacted Inmate Investigation Report, Case Number ATW-13-0207-A).  The letter accompanying the release of records notified plaintiff of his right to file an administrative appeal to the DOJ's Office of Information Policy ("OIP") within 60 days.  *See id*., Attach. 6 (Letter to plaintiff from Dennis M. Wong, Regional Counsel, WXRO, dated December 11, 2013).  WXRO administratively closed the matter "pending notification from [plaintiff] as to whether he was satisfied with the WXRO decision."  *Id*. ¶ 23.  According to the declarant, "WXRO . . . received

no further correspondence from [plaintiff] with regard to this FOIA [r]equest," *id*. ¶ 23, and he

"has not appealed WXRO's decision on FOIA Request No. 2013-10877" to the OIP, *id*. ¶ 24.

### C.  FOIA Request No. 2013-01945

Plaintiff alleges that, in September 2012, he submitted a FOIA request to the BOP's

Central Office, Compl. at 5, for the following information:

> [1] All medical records generated between January 2003 to
> September 13[,] 2012[.]
> [2] All commissary records generated between April 2012 to
> September 13[,] 2012 listing all the commissary items [he]
> purchased at Yazoo Medium Security prison in Yazoo City[,]
> Mississippi[.]
> [3] All use of force reports . . . generated between April 22[,] 2012
> to September 13[,] 2012 at Yazoo Medium Security prison in Yazoo
> City[,] MS[.]
> [4] A copy of [his] complete central file and privacy folder related
> to [his] current commitment in Case No. 5:11-cr-961 [.]
> [5] A copy of [his] complete RETIRED central file and privacy
> folder related to a previous commitment in Case No. 3:03-cr-426L[.]

*Id*., Ex. F (Freedom of Information Act Request for Records dated September 13, 2012).

The BOP Central Office received this request on November 29, 2012, and assigned the

matter to the Southeast Regional Office ("SERO") for processing.  First Vickers Decl. ¶ 27.

"The SERO FOIA technician assigned FOIA Request No. 2013-01945 to this matter [and] sent

an acknowledgment letter to [plaintiff]."  *Id*.  SERO staff estimated that fees for processing the

request totaled $96.60, and notified plaintiff that the BOP would proceed no further unless

plaintiff either confirmed his willingness to pay the fees, modified his request, or accept the two

hours of search time available to him at no cost.  *Id*. ¶ 28; *see id*., Attach. 9 (Letter to plaintiff

from Craig Simmons, Deputy Regional Counsel, SERO, dated December 7, 2012).  Plaintiff

refused to pay the fees.  *See id*. ¶ 30-31; *see also id*., Attach. 10 (Letter to C. Green from plaintiff

dated December 12, 2012).  SERO administratively closed the matter, *id.* ¶ 29, and plaintiff did

not appeal SERO's decision to OIP, *id.* ¶ 32.

## II. DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

"FOIA cases are typically and appropriately decided on motions for summary judgment."

*Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  On a motion for summary judgment, the

Court generally "must view the evidence in the light most favorable to the nonmoving party,

draw all reasonable inferences in his favor, and eschew making credibility determinations or

weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Ordinarily, where the agency

moves for summary judgment, the agency must identify materials in the record to demonstrate

the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1).  Plaintiff as the

non-moving party then must point to specific facts in the record to show that there remains a

genuine issue that is suitable for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

But where, in a FOIA case, plaintiff has not provided evidence that an agency acted in bad faith,

"a court may award summary judgment solely on the basis of information provided by the

agency in declarations," *Moore*, 601 F. Supp. 2d at 12, provided that the declarations are not

"conclusory, merely reciting statutory standards, or . . . too vague or sweeping."  *King v. U.S.*

*Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).[1]

---

[1]  The Court rejects plaintiff's argument, *see* Pl.'s Opp'n [ECF No. 34] at 11-13; Pl.'s Reply [ECF No. 42] at 1-2, that the First Vickers Declaration [ECF No. 15-2] is misleading, inaccurate and otherwise unreliable.  Plaintiff bases these assertions on a minor discrepancy: one declarant stated that the BOP received Request No. 2013-10877 on August 19, 2013, *see* First Vickers Decl. ¶ 20, while the second declarant stated that the BOP received the request on August 16, 2013 and "uploaded [the request] into the database on August 19, 2013," First Ochoa Decl. ¶ 5 n.2. This discrepancy does not affect the outcome of this case, and there is no basis for the Court to discard the First Vickers Declaration in its entirety.

## B. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before seeking judicial review" under the FOIA.  *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion gives "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).  If a requester has not exhausted his administrative remedies prior to filing a civil action in federal district court, his claim is subject to dismissal.  *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).

### 1. BOP Procedures for Processing FOIA Requests

The BOP's declarant explains that agency regulations require that a FOIA request be submitted in writing, addressed to the BOP's Director, and sent to the FOIA/Privacy Act Section of the Office of the General Counsel at the Central Office in Washington, D.C.  *See* First Vickers Decl. ¶ 6 (citing 28 C.F.R. § 513.60).  A Central Office FOIA Technician reviews each request to determine which office will process it: the Central Office or one of the BOP's six regional offices.  *See id*. ¶ 7.  "If an inmate requests records located [a] BOP institution[], the request [is] forwarded to the regional official for the region in which the institution is located."  *Id*.  For example, if the Central Office FOIA technician determines that the Western Regional Counsel's Office or to the Southeast Regional Counsel's Office should handle a request, he forwards the request to the appropriate FOIA technician.  *Id*.; *see id*. ¶ 27 n.2.  The FOIA technician "enter[s] the request into the BOP's database and assign[s] the request a FOIA number for tracking purposes."  *Id*. ¶ 8.  "Although each region enters its FOIA requests into a database, the database is centralized and tracks ever FOIA request received by the BOP."  *Id*.  Once a request is entered,

"the [system] generates an acknowledgment letter [to] inform[] the requester that [his] FOIA request [has been] received and assigned a number." *Id.* ¶ 9.

Agency regulations require notice to a requester if the anticipated fees for processing his request exceed $25. *Id.* ¶ 12. "If the anticipated fee exceeds $25, the 'request shall not be considered received and further work shall not be done on it until the requester agrees to pay the anticipated total fee' or modif[ies] the request so as to not incur a fee." *Id.* (quoting 28 C.F.R. § 16.11(e)) (emphasis omitted). Accordingly, the FOIA technician to whom a request is assigned "determine[s] whether an estimated . . . fee letter should be sent to the requester," and "[o]nly after the requester agrees to pay the estimated fee [or] modifies the request so as not to incur a fee . . . will [a] search be conducted." *Id.* ¶ 13 (emphasis omitted).

If responsive records are located, the FOIA technician "review[s] the records to determine whether any portion of the records [is] exempt from disclosure under [the] FOIA." *Id.* ¶ 14. Before releasing records, the staff member "will contact the requester for payment of a fee less than $25 [or] payment of an estimated fee." *Id.* "If the records contain exempt[] information, any reasonably segregable portions of the records [are] disclosed after deletion of the exempt information." *Id.* If a request is denied in whole or in part, the requester is notified in writing of the reasons for the decision. *See id.* Lastly, the requester is "advised that he may appeal the denial of information to the Office of Information and Policy (OIP)." *Id.*

## 2. Request Regarding Administrative Tort Claim No. TRT-WXR-2013-05023

The BOP first argues that plaintiff failed to exhaust his administrative remedies regarding his FOIA request for information about Administrative Tort Claim No. TRT-WXR-2013-05023. *See* Defs.' Mem. at 13-14. Because plaintiff failed to address the request to the BOP's Director

and to mail it to the Central Office as required under 28 U.S.C. § 513.60, defendant deems the "request . . . improperly made" and therefore subject to dismissal. *Id*. at 14.

A valid FOIA request is one submitted in accordance with applicable regulations. 5 U.S.C. § 552(a)(3) (providing that an agency must make records promptly available upon any request "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed"). Plaintiff asserts that defendant received his request on August 22, 2013, yet as of the date he filed his complaint, the BOP had not responded to the request. *See* Pl.'s Cross-Mot. for Summ. J. [ECF No. 34] ("Pl.'s Opp'n") at 1-2. He offers no support for his assertion that the Office of the General Counsel at BOP's Central Office in Washington, D.C. actually received this FOIA request, however. At any rate, plaintiff waives this claim. *Id*. at 15. Therefore, because plaintiff did not exhaust his administrative remedies regarding Administrative Tort Claim No. TRT-WXR-2013-05023, the Court will grant defendant's motion for summary judgment on this claim.

### 3.  FOIA Request No. 2013-10877

Second, the BOP argues that plaintiff failed to exhaust his administrative remedies by filing an administrative appeal to the OIP of the BOP's determination on FOIA Request No. 2013-10877 before filing this action. *See* Defs.' Mem. at 15-16. Plaintiff counters that the BOP's failure to respond to his request within the requisite 20-day period, *see* 5 U.S.C. § 552(a)(6)(A)(i); *see also* First Ochoa Decl. ¶ 4 n.1 (acknowledging that the BOP "took longer than the statutorily-allowed time to respond to [plaintiff's] claim"), is itself a valid basis to award summary judgment in his favor. *See* Pl.'s Opp'n at 3, 14.

Exhaustion is not a jurisdictional requirement, *Hidalgo*, 344 F.3d at 1258, but instead is a prudential consideration, *Wilbur*, 355 F.3d at 677.  The record now before the Court includes a copy of the redacted records released to plaintiff by the BOP, declarations supporting the BOP's decisions to withhold information under Exemptions 7(C) and 7(F), and full briefing by the parties.  In these circumstances, the Court will resolve the matter on the merits and deny defendant's motion on this claim.

### 4.  FOIA Request No. 2013-01945

Lastly, the BOP contends that plaintiff failed to exhaust his administrative remedies with respect to FOIA Request No. 2013-01945 by refusing to pay estimated fees for processing the request.  *See* Defs.' Mot. at 16-17.  Plaintiff argues that the BOP's failure to respond to this FOIA request within 20 days of its receipt not only relieves him of any obligation to pay fees, *see* Pl.'s Opp'n at 15, but also is a valid basis to grant summary judgment in his favor, *see id*. at 2, 10-11.  He is mistaken.

Because "an agency's disclosure obligation is triggered by its receipt of a request that, *inter alia*, is made in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to follow . . . , a requester's failure to pay assessed fees . . . constitutes a failure to exhaust."  *Marcusse v. U.S. Dep't of Justice*, 959 F. Supp. 2d 130, 141 (D.D.C. 2013) (citations and internal quotation marks omitted) (brackets in original), *aff'd*, Nos. 14–5073, 14–5099, 14–5100, 2015 WL 1606930 (D.C. Cir. Mar. 24, 2015) (per curiam); *see Oglesby*, 920 F.2d ay 66 (stating that "[e]xhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees").  Here, defendant demonstrates that the BOP notified plaintiff on December 7, 2012 – within the requisite 20-day period – of anticipated fees, and advised him that no further processing of his request would occur without his

agreement to pay fees.  *See* First Vickers Decl. ¶¶ 26-28.  Plaintiff does not demonstrate that he

actually paid any part of the requested fees.  Nor does plaintiff show that he challenged the

calculation of the fees at the administrative level, and the Court will not entertain his arguments,

*see, e.g.,* Pl.'s Reply at 3-4, in the context of this litigation.

Because defendant demonstrates plaintiff's failure to exhaust his administrative remedies

through compliance with the agency's fee regulations, the Court will grant summary judgment

for the BOP regarding FOIA Request No. 2013-01945.  *See, e.g., Tereshchuk v. Bureau of*

*Prisons*, 851 F. Supp. 2d 157, 162 (D.D.C. 2012); *Antonelli v. Bureau of Alcohol, Tobacco,*

*Firearms & Explosives*, 555 F. Supp. 2d 16, 23 (D.D.C. 2008).

### C.  The BOP's Response to FOIA Request No. 2013-10877

For purposes of this discussion, the Court proceeds as plaintiff properly had exhausted his

administrative remedies with respect to FOIA Request No. 2013-10877 by pursuing an appeal to

the OIP before filing this civil action.  The Court will grant summary judgment for the BOP on

this issue because the agency demonstrates that its compliance with its obligations under the

FOIA: it conducted a reasonable search for responsive records, justified its decision to redact

information under Exemptions 7(C) and 7(F), and released all reasonably segregable information

to plaintiff.

### 1.  The BOP's Search for Responsive Records

"The Court employs a reasonableness test to determine the adequacy of search

methodology . . . consistent with the congressional intent tilting in favor of disclosure."

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citations and internal

quotation marks omitted).   An agency "fulfills its obligations under FOIA if it can demonstrate

beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 126, and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The BOP reasonably interpreted plaintiff's request for a report issued by the Special Investigative Service, *see* Compl. at 3, as a request for records of the Special Investigative Section ("SIS"), the unit which "investigates inmates and staff misconduct within the institution, gathers intelligence on criminal activities, and investigates threats to the safety of inmates and staff," First Vickers Decl. ¶ 11.  SIS records are maintained at the originating institution, *id.*, "either in paper form, or more recently, electronically in the TRUINTEL system," Mem. of P. & A. in Support of Defs.' Renewed Mot. for Summ. J. [ECF No. 32-1] ("Defs.' Renewed Mot."), First Supp. Decl. of Jennifer Vickers ("Supp. Vickers Decl.") ¶ 4.  The declarant describes TRUINTEL as the system "that stores everything in relation to inmate intelligence, including but not limited to investigative reports of incidents, Breathalyzer and urinalysis accounts, Security

Threat Group (STG) assignments, referrals to the FBI and subpoenas."  Supp. Vickers Decl. ¶ 4.

A search of "all archived paper files" maintained at USP Atwater yielded no responsive records.

*Id*. ¶ 5.  However, a search of electronic records on TRUINTEL using plaintiff's name and

Register Number as search terms "returned . . . one SIS report at USP Atwater in 2013, ATW-

13-0207-A."[2]  *Id*.  This was the five-page report released to plaintiff in redacted form in

December 2013.  *Id*.

Based on the BOP's supporting declarations and absent any opposition from plaintiff, the

Court concludes that the agency conducted a reasonable search for records response to FOIA

Request No. 2013-10877.

## 2.  Exemption 7

### *i.*  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To

show that the disputed documents were compiled for law enforcement purposes, the [agency]

need only establish a rational nexus between the investigation and one of the agency's law

enforcement duties and a connection between an individual or incident and a possible security

risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal

quotation marks and citations omitted).

---

[2]  The declarant explains that "[t]he 'A' means the report was amended and overrode a previous version.  Supp. Vickers Decl. ¶ 6.  Although a search of plaintiff's Central File located "a photocopy of ATW-13-0207," it is considered a "non-operative version overridden by ATW-13-0207-A."  *Id*.

Defendant's declarant submits that the BOP "is a law enforcement agency," the principal mission of which "is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities in becoming law-abiding citizens." Defs.' Mem., Decl. of Beth Ochoa ("First Ochoa Decl.") ¶ 12; Defs.' Renewed Mot., First Supp. Decl. of Beth Ochoa ("Supp. Ochoa Decl.") ¶ 4 (stating that BOP's "mission includes protecting inmates, staff and the community. ). The declarant explains that the records responsive to FOIA Request No. 2013-10877 were generated when "[p]laintiff requested that the BOP-SIS investigate whether his security needs could be met at USP Atwater." Supp. Ochoa Decl. ¶ 6. And according to plaintiff, "[t]he report indicates separation factors and the degree of risk of physical injury or death [he faced] at Atwater USP." Compl. at 4. The BOP thus demonstrates that the relevant records were compiled for law enforcement purposes within the scope of Exemption 7.

## *ii.* Exemption 7(C)

Exemption 7(C) protects from disclosure information found in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115

(D.C. Cir. 2007).  The privacy interest at stake belongs to the individual, not the government

agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly

with alleged criminal activity."  *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  The D.C.

Circuit has held "categorically that, unless access to the names and addresses of private

individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to

confirm or refute compelling evidence that the agency is engaged in illegal activity, such

information is exempt from disclosure."  *SafeCard Servs.*, 926 F.2d at 1206.

As is stated above, the SIS report at issue pertains to an investigation of plaintiff's

security needs and whether those needs could be met at USP Atwater.  *See* Supp. Ochoa Decl. ¶

6; Compl. at 4.  The BOP withholds "the names and/or identifying information of BOP

employees responsible for conducting supervising, and/or maintaining investigative activities"

included in the report.  First Ochoa Decl. ¶ 16.  Any "[p]ublicity (adverse or otherwise)

regarding [a] particular investigation to which [these employees were] assigned may seriously

prejudice their effectiveness in conducting other investigations."  *Id*.  In addition, this

information is withheld "to protect BOP employees, as individuals, from unnecessary

questioning as to the course of an investigation."  *Id*.

The BOP also redacts "the names and/or identifying information of third party inmates

who . . . provided information to the BOP during the course of its investigation."  *Id*. ¶ 17.  In the

defendant's experience, "information provided by third party inmates during an interview is one

of the most productive investigative tools used by its SIS."  *Id*.  The declarant explains that these

inmate interviewees "fear that their identities may be exposed and, consequently, that they could

be harassed, intimidated or threatened with legal consequences, economic reprisal or physical

harm from other inmates." *Id.* "To surmount these fears, interviewees must be assured that their names and identifying information will be held in the strictest of confidence." *Id.*

The declarant avers that there is "[n]o countervailing public interest . . . in the release of this privacy-protected information, because its dissemination would not help explain government activities and operations or outweigh [these] third party individuals' privacy rights[.]" *Id.* ¶ 18.

*iii*. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "While courts generally have applied [FOIA] Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm." *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006) (quoting 5 U.S.C. § 552(b)(7)(F)); s*ee Durham v. U.S. Dep't of Justice*, 829 F. Supp. 428, 434 (D.D.C. 1993) (protecting third parties, some of whom requested placement in Federal Witness Protection Program, with knowledge of murder the plaintiff had committed). "In reviewing claims under [FOIA E]xemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque Pub. Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)); *see Linn v. U.S. Dep't of Justice*, No. 92-1406, 1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995) (noting court's inquiry as to "whether there is some nexus between disclosure and possible harm"). Within limits, courts defer to the agency's assessment of danger. *See Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) (quoting *Linn*, 1995 WL 631847, at *9).

The BOP's declarant explains that, among other functions, "the BOP monitors and controls certain inmates who present special needs for management."  Supp. Ochoa Decl. ¶ 6. These inmates (Central Inmate Monitoring ("CIM") cases), "require a higher level of review to establish clearance for transfers, temporary release or community activities."  *Id*.  The report at issue in this case pertained to plaintiff's security needs.  *Id*.  She further explains:

> A CIM category routinely considered in SIS reports is separation – that is, whether inmates may be confined in the same federal institution as other inmates depending on whether there is a verified threat against the subject of the investigation.  To make this determination, SIS staff will consider whether the subject of the report provided testimony in open court, whether he exhibited aggressive or intimidating behavior towards other specific individuals, or whether he has provided information concerning unauthorized or illegal activities of others.  SIS staff will interview the subject and other inmates who had familiarity with the subject. SIS staff will memorialize those findings in a report, as it did concerning [p]laintiff in this case.  Those findings were redacted with a red "b7f" marking.
>
> In conjunction with a CIM review, SIS can investigate whether an inmate belongs to a Security Threat Group (STG), a formal or informal prison gang.  Groups within correctional facilities are categorized as STGs depending upon parameters such as gang history, purpose, involvement in illegal activities and propensity for violence.  STGs are primarily formed to protect . . . gang members. However, STGs often involve illegal activities such as assault, murder, kidnapping, and controlled substance distribution.  They also have control and influence over street gangs outside the prison boundaries.  STGs wield enormous power and influence and pose threats to the safety of prison officials and other inmates.  SIS staff will memorialize those findings in a report, as it did concerning [p]laintiff in this case.  Those findings were redacted with a red "b7f" marking.

*Id*. ¶¶ 7-8.

According to the declarant, disclosure of certain information in the report "would be harmful to SIS staff," who "would be subjected to threats of violent reprisal if STGs knew that

certain staff members had attempted or were attempting to stifle their operations." *Id.* ¶ 9. Disclosure of such sensitive information also would discourage staff from "conduct[ing] detailed, comprehensive investigations and document[ing] their findings," which in turn would "increase[] the propensity of security risks by housing inmates together [who] do not get along or are part of rival groups" potentially resulting in "an institution-wide incident." *Id.* Further, the declarant states, because prisoners "suspected of 'snitching' or 'ratting out' . . . other inmates" routinely are the victims of assault, "it is reasonable to infer that the openness in which [plaintiff] discussed past prison associations and in which [other] inmates discussed [plaintiff] were provided based on an implied assurance of confidentiality." *Id.* ¶ 10. For these reasons, the declarant avers that "disclosure of the redacted information would endanger the life or physical safety of inmates and staff members named within the report." *Id.* ¶ 11.

Plaintiff's challenge to the BOP's decision to withhold information from the SIS report under Exemptions 7(C) and 7(F) arose from the results of a subsequent FOIA request. On October 31, 2014, plaintiff "received a copy of . . . records responsive [to FOIA Request No.] 2013-9188," Pl.'s Opp'n at 7, for "the SIS Report (Threat Assessment) prepared on/about August 2014, for Martin Sanchez-Alaniz, Reg. No. 31293-177," *id.*, Ex. D (Letter to plaintiff from Dennis M. Wong, Regional Counsel, WXRO, dated October 28, 2014) at 1. According to plaintiff, the results of both FOIA Request Nos. 2013-10877 and 2013-9188 were the same – a five-page Inmate Investigative Report prepared by SIS staff at USP Atwater. Plaintiff's "comparative legal analisis [sic] revealed that the [BOP] redacted the two identical S.I.S. reports differently and under arbitrary and capricious circumstances that has [sic] no base under the Exemptions outlined in the [FOIA]." Pl.'s Opp'n at 7. For this reason, plaintiff asserted that the BOP is "not entitled to withhold any part of the S.I.S. reported related to [FOIA Request No.

2013-10877] (this case) . . . ." *Id.* Belatedly, plaintiff challenges the BOP's reliance on Exemption 7(F) as "hypocritical," Pl.'s Reply at 4, referring again to the discrepancy between the redactions made in response to FOIA Request No. 2013-10877 and to FOIA Request No. 2014-9188, *see id.* at 4-7.

Even if there were a legal basis for plaintiff's arguments, it is apparent that these reports "are not two identical reports from [SIS]." Errata [ECF No. 37-1], Second Supp. Decl. of Beth Ochoa ("Second Supp. Ochoa Decl.") ¶ 2. "The investigation type[s] for FOIA Request [No.] 2014-10988 and FOIA Request [No.] 2013-10877 are different," Second Supp. Ochoa Decl. ¶ 2, and plaintiff's role in one investigation differs from his role in the other, *id.* ¶ 3. Accordingly, BOP staff saw fit to release certain information from one SIS report and to withhold similar information from the other. For example, "[b]ecause [plaintiff's] role in the SIS report that forms the basis of FOIA Request [No.] 2013-10877 was listed as 'Unknown,' a determination was made that there was no need to redact [the] word ['unknown.']" *Id.*[3]

The Court concludes that the decision to redact the names of and identifying information about BOP employees and inmates under Exemptions 7(C) and 7(F) was appropriate.

### 3. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5

---

[3] Furthermore, plaintiff's complaint pertains only to three requests for information, and FOIA Request No. 2014-9188 came about after the filing of the complaint. Plaintiff cannot now broaden the scope of his original complaint by raising new claims regarding FOIA requests subsequently made. His motion for leave to file a supplemental pleading [ECF No. 46] will be denied.

18

U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The BOP's declarant avers that "[n]o reasonably segregable, nonexempt portions [of the SIS report] were withheld from [p]laintiff."  First Ochoa Decl. ¶ 23.  Based on the declaration and a copy of the redacted SIS report itself, the Court concludes that the BOP has released all reasonably segregable information.

## III. CONCLUSION

The BOP has demonstrated that it conducted an adequate search for information responsive to FOIA Request 2013-10877, that it properly withheld information under Exemptions 7(C) and 7(F), and that all reasonably segregable information from the SIS report at issue has been released to plaintiff.  Further, the agency has demonstrated that plaintiff failed to exhaust his administrative remedies with respect to his request for information regarding Administrative Tort Claim No. TRT-WXR-2013-05023 and FOIA Request No. 2013-01945. The BOP thus has complied with its obligations under the FOIA, and its motion for summary judgment will be granted.  An Order accompanies this Memorandum Opinion.

/s/
EMMET G. SULLIVAN
United States District Judge

DATE: March 25, 2016

19